COMMONWEALTH of Pennsylvania,
Appellee,

v.

Emily SIERRA, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 18, 2000.
Filed May 15, 2000.

James J. Karl, Lancaster, for appellant.

Joseph C. Madenspacher, Asst. Dist. Atty., Lancaster, for Com., appellee.

Before DEL SOLE, TODD and TAMILIA, JJ.

TODD, J.:

¶ 1 Emily Sierra appeals the judgment of sentence entered May 21, 1999 by the Court of Common Pleas of Lancaster County. Sierra initially was sentenced to 8 to 23 months imprisonment, with 3 years consecutive probation, for aggravated assault.[1] Following a determination that she

had committed technical violations of her parole and probation, both were revoked and she was resentenced to 5 to 20 years imprisonment. After a careful review of the record in this case, we find no abuse of discretion, and therefore affirm.

¶ 2 On July 19, 1997, Sierra pled guilty to aggravated assault, a first degree felony. Pursuant to a negotiated plea agreement, she was sentenced by the Honorable Michael A. Georgelis to a term of 8 to 23 months imprisonment in Lancaster County Prison, plus 3 years consecutive probation. She was released on parole on September 22, 1997. Approximately 4 months after being released on parole, Sierra was arrested for simple assault and a capias [2] was issued alleging that she violated her parole. On April 24, 1998, after a hearing, Judge Georgelis found that she had violated her parole and her parole was revoked. As a result, she was sentenced to the unexpired part of her original 23 month term, but was made eligible for parole in 3 months.

¶ 3 While again on parole, a second capias was issued alleging that Sierra had failed to report for scheduled appointments with her parole and probation officer.[3] At a hearing before Judge Georgelis, Sierra stipulated to these technical violations. She again was found to be in violation of her parole and probation and both were revoked. A presentence report was prepared. On May 21, 1999, Judge Georgelis resentenced her on her original offense, aggravated assault, to a term of 5 to 20 years, the statutory maximum, in state prison with credit for time served.[4] Her petition for modification of sentence was denied and this appeal followed.

---

1. 18 Pa.C.S. § 2702(a)(1).

2. A capias is a writ requiring a government official to bring a parolee or probationer to court to answer for an alleged parole or probation violation.

3. The capias states that she failed to report as directed to scheduled appointments at the

probation office on September 2, September 23, October 9, and October 16, 1998. (Motion to Modify Sentence, Exhibit C.)

4. 18 Pa.C.S. §§ 2702(a)(1), 1103(1). Sierra received 493 days of credit for time served. (Modified Sentencing Order of May 24, 1999.)

¶ 4 Initially we note that Sierra does not dispute that the sentencing court had the authority to revoke her probation despite the fact that she was on parole at the time and had not yet begun her probationary term. Indeed, it is clear that the court has this power. *Commonwealth v. Ware*, 737 A.2d 251, 253 (Pa.Super.1999). However, she contends that in order for a court to do so, it must first find that the parole/probation violation was "egregious," and that her technical violations cannot be considered to be sufficiently severe. (Appellant's Brief at 8–9, 11.) We find no authority for this position, and Sierra cites none.

¶ 5 Sierrra cites to *Commonwealth v. Wendowski*, 420 A.2d 628 (Pa.Super.1980), for the assertion that probation can be revoked if the defendant "should commit offenses of such nature as to demonstrate to the court that he is unworthy of probation and that the granting of the same would not be in subservience to the ends of justice and the best interest of the public, or the defendant." *Id.* at 630 (quoting *James v. United States*, 140 F.2d 392, 394 (5th Cir.1944) (Waller, J., concurring)) (Appellant's Brief at 8–9).

¶ 6 Although the offenses that triggered the parole and probation revocation—Sierra's failure to keep parole appointments—were not assaultive or independently criminal, technical violations are sufficient to trigger the revocation of probation. *See, e.g., Commonwealth v. Edwards*, 450 A.2d 15 (Pa.Super.1982) (probation revoked for failure to report to probation officer and attend community mental health facility for outpatient treatment). Further, her technical violations were preceded by an arrest for simple assault, for which violation Judge Georgelis had revoked her previous parole arrangement and had modified her sentence.

¶ 7 The record and the opinion of the sentencing court demonstrate that it indeed concluded that Sierra was unworthy of probation and that allowing her to continue on probation would not be in her, or society's, best interest.

¶ 8 On appeal, Sierra argues that although her sentence was within the statutory limits,[5] it was manifestly excessive in light of its severity and because her probation violation was technical and did not involve a new criminal offense. This issue presents a challenge to the discretionary aspects of her sentence rather than its legality and, thus, is not an appeal of right.[6] *Commonwealth v. Brown*, 741 A.2d 726, 734 (Pa.Super.1999) (en banc). Rather, to effect an appeal an appellant must demonstrate that there is a "substantial question" that the sentence is inappropriate. 42 Pa.C.S. § 9781(b); *Brown*, 741 A.2d at 734. This determination is made

---

5. After revocation of probation, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S. § 9771(b). *See also Commonwealth v. Smith*, 669 A.2d 1008, 1011 (Pa.Super.1996) ("[I]t is well-settled that upon revocation of probation, a court possesses the same sentencing alternatives that it had at the time of the initial sentencing.").

6. The new sentence imposed by the court on Sierra is within the permissible statutory maximum and, therefore, clearly is a legal sentence. Sierra asserts that it nonetheless is a manifestly excessive one. It is often noted that our scope of review following a sentence imposed after revocation of probation is limited to the validity of the revocation proceedings and the legality of the final judgment of sentence. This language was first set forth by our Supreme Court in *Commonwealth v. Gilmore*, 465 Pa. 202, 205, 348 A.2d 425, 427 (1975). Despite the continued use of this language by the courts of the Commonwealth, it is clear the Supreme Court did not intend to limit review to the legality of a sentence, i.e., whether it has been authorized by the legislature. The Supreme Court's decisions subsequent to *Gilmore* belie such a narrow construction of appellate review. *See Commonwealth v. Cottle*, 493 Pa. 377, 426 A.2d 598 (1981), (reviewing and setting aside a sentence of total confinement upon the revocation of probation, even though the sentence itself was legal).

on a case-by-case basis, and this Court will grant the appeal "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Brown*, 741 A.2d at 735.

¶ 9 To this end, an appellant must include in his or her brief a concise statement of the reasons relied on for allowance of appeal. Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki*, 513 Pa. 508, 511–12, 522 A.2d 17, 18–19 (1987). Sierra has complied with this rule.

■ ¶ 10 We believe the circumstances of this case justify review by this Court. The imposition of Sierra's sentence of total confinement, at the statutory maximum for her underlying offense, following revocation of probation for a technical parole/probation violation—and not for a new criminal offense—is, on its face, so disproportionate as to implicate the "fundamental norms which underlie the sentencing process." *Brown*, 741 A.2d at 735.

■ ¶ 11 The Sentencing Code reveals that the legislature has given particular consideration to the appropriateness of sentences of total confinement following revocation of probation. *See* 42 Pa.C.S.A. § 9771. On appeal from a revocation proceeding, we find a substantial question is presented when a sentence of total confinement, in excess of the original sentence, is imposed as a result of a technical violation of parole or probation. Such a sentence must be examined in light of section 9771(c).[7]

¶ 12 Here, Section 9771(c)(2) has been satisfied. Judge Georgelis concluded that probation was ineffective in rehabilitating Sierra. More explicitly however, at the sentencing hearing, he was clear about her propensity for further criminal acts: "I conclude that you need protection and society needs protection. I think you're a time bomb ticking with your history of aggravated assault and other violent behavior." (N.T., 5/21/99, at 19.)

¶ 13 Therefore, we will address the merits of Sierra's appeal.

■■ ¶ 14 The imposition of sentence following the revocation of probation "is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal." *Commonwealth v. Smith*, 669 A.2d 1008, 1011 (Pa.Super.1996). An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion "unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Smith*, 543 Pa. 566, 571, 673 A.2d 893, 895 (1996).

■ ¶ 15 After thoroughly reviewing the record, we are confident that the sentencing court did not abuse its discretion. Judge Georgelis gave careful consideration to all relevant factors in sentencing Sierra, including her significant criminal record as a juvenile and as an adult. The opinion of the court reflects this:

Finally, as to the Defendant's contention that the sentence was excessive, illegal and an abuse of discretion, I note that all of the reasons for my sentence and all of the factors considered before imposing it were comprehensively stated on the record of the sentencing hearing. I considered the following: the Defendant's age (20); her family history; her criminal history, which includes juvenile adjudications for 1 robbery, 3 thefts, 1

---

7. According to 42 Pa.C.S. § 9771(c):
   The court shall not impose a sentence of total confinement upon revocation [of probation] unless it finds that:
   (1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

terroristic threat, 3 simple assaults, 1 failure to comply with a district justice directive, 1 probation violation and 1 failure to adjust and adult convictions for 2 second degree felony aggravated assaults, 1 simple assault and 1 parole violation; her educational background, including all of the school records of the School District of Lancaster; her substance abuse history, starting with her use of illegal substances at the age of 13; her mental and emotional history; her employment history; disciplinary reports during her stay at the Lancaster County Prison, including one for having threatened a prison officer that she would stab her with a pencil; the letter that the Defendant had sent me; the Defendant's comments at the sentencing hearing; the Defendant's attorney's comments; the entire pre-sentence investigation report; and the testimony of her parole/probation officer at the March 26, 1999 hearing which substantiated her total disregard for compliance with the rules and regulations of the Adult Probation and Parole Department.

After all of these factors were considered, I concluded that probation and parole were ineffective in rehabilitating the Defendant and that she has been feigning certain mental health problems as a means to manipulate all of the efforts the criminal justice system has attempted to rehabilitate her. N.T. 19.

Because, as noted above, aggravated assault is a first degree felony, the 5 to 20 year sentence is clearly a legal one. Furthermore, because of all of the reasons noted above and at the sentence hearing, I do not believe that this sentence is excessive, and I do not believe that it was an abuse of discretion to impose it. This is especially so in light of her very significant criminal history, her intensive exposure to the juvenile and adult criminal justice systems and her consistent refusal to accept responsi-

bility and the help afforded to her in all of the efforts made to rehabilitate her. (Trial Court Opinion, 7/19/99, at 4–6.)

¶ 16 A discussion of our Supreme Court's analysis in *Commonwealth v. Cottle, supra,* is instructive. In *Cottle,* the Court held, based on the particular facts of that case, that technical violations of probation were insufficient to support the trial court's revocation of probation and resentencing.[8] In *Cottle,* the defendant voluntarily turned himself in to the authorities for his role in a robbery and was sentenced to jail, with immediate parole, and 5 years probation. *Id.* at 379–80, 426 A.2d at 599. Near the end of his probationary term, despite having no criminal convictions while on probation, his probation was revoked because he had stopped reporting to the probation office midway through his probationary term. *Id.* at 380, 426 A.2d at 599. At his revocation hearing, the probation office recommended his probation be terminated and he be discharged because he had pursued an alcohol treatment program and secured permanent employment. *Id.* at 381, 426 A.2d at 599. Nonetheless, he was sentenced to 2½ to 5 years in jail, the maximum term for his robbery offense. *Id.* The Supreme Court held that the imposition of a sentence of total confinement after revocation violated the requirements of 42 Pa.C.S. § 9771(c) (then 18 Pa.C.S. § 1371(c)) because Cottle's probation already had achieved its rehabilitative purposes. Accordingly, the Court ordered resentencing. *Id.* at 386, 426 A.2d at 602.

¶ 17 The Supreme Court emphasized in *Cottle* that there was "nothing in the record to indicate that appellant was likely to commit a future crime if he was not imprisoned." *Id.* at 385, 426 A.2d at 601. The Court further explained that "[p]robation is a rehabilitative device to be used to assist the offender in his adjustment to life within society" and that Cottle "did in fact accomplish that which the probation was

---

**8.** We recognize that the defendant in *Cottle* was sentenced before 42 Pa.C.S. § 9781(b) (requiring "substantial question" to appeal discretionary aspects of sentence) became effective.

designed to achieve" by overcoming his alcohol problem and by finding gainful employment. *Id.* at 385, 426 A.2d at 602.

¶ 18 In the instant case, Sierra's criminal record and behavior on parole are markedly different. Here, Judge Georgelis concluded that probation and parole were ineffective in rehabilitating Sierra and that she had been feigning certain mental problems as a means to manipulate the criminal justice system. (Trial Court Opinion, 7/19/99, at 5–6.) Judge Georgelis further told Sierra at the sentencing hearing that she was a "time bomb ticking" with her history of violent behavior and that both she and society needed protection. (N.T., 5/21/99, at 19.)

¶ 19 We are mindful of our role and the sentencing court's unique perspective: "[W]hen reviewing sentencing matters, we must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa.Super.1999) (en banc). Having thoroughly reviewed this record, we believe that Judge Georgelis' conclusion, based in part on his in-depth knowledge of this individual, that parole and probation were ineffective in rehabilitating her and that further incarceration of this degree was appropriate, was not an abuse of discretion.

¶ 20 Judgment of sentence affirmed.